IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RMFS BENEFIT SOLUTIONS, LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-00067 |
| ) | |
| COMMUNITY SCHOOLS OF FRANKFORT, ) | |
| BY AND THROUGH THE BOARD OF SCHOOL ) | |
| TRUSTEES, COMMUNITY SCHOOL ) | |
| CORPORATION OF FRANKFORT, and ) | |
| McGOWAN INSURANCE GROUP, LLC, ) | |
| ) | |
| *Defendants.* ) | |

**PLAINTIFF RMFS BENEFIT SOLUTIONS, LLC'S COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL**

Plaintiff, RMFS Benefit Solutions, LLC ("RMFS"), by and through the undersigned counsel, and for its Complaint against Defendants, Community Schools of Frankfort, by and through the Board of School Trustees ("CSF"), Community School Corporation of Frankfort ("CSCF") (collectively, CSF and CSCF are referred to as "Frankfort"), and McGowan Insurance Group ("McGowan"), hereby alleges and states as follows:

**GENERAL ALLEGATIONS**

**Parties**

1. RMFS is a foreign limited liability company registered to do business in the State of Indiana with its principal place of business located in Grove City, Ohio.

2. CFS is a public entity created pursuant to the provisions of the Indiana Code, with its principal place of business located in Frankfort, Indiana.

3. Upon information and belief, and to the extent it is a separate and distinct entity from CFS, CSCF is a public entity created pursuant to the provisions of the Indiana Code, with its principal place of business located in Frankfort, Indiana.

4. McGowan is a domestic limited liability company registered to do business in the State of Indiana with offices throughout the State of Indiana. Upon information and belief, McGowan acquired and/or is comprised of certain members, including but not limited to Keystone Agency Partners LLC ("Keystone"), McGowan Holding Company Inc. ("McGowan Holding") The Jackson Agency, Inc. ("Jackson") and/or Jackson-McCormick Insurance ("McCormick") (collectively, "McGowan and its Predecessor Entities").

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the damages occurred in this district.

## Factual Background

7. RMFS markets and distributes insurance proceeds to public and private entities and bona fide association plans.

8. RMFS and Frankfort have a fourteen (14) year relationship, having entered into a series of various consulting fee and non-disclosure agreements.

9. In 2020, RMFS and Frankfort executed a certain 2020 Consulting Fee and Non-Disclosure Agreement (the "Agreement"). A true and accurate copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit 1.

10. Pursuant to the Agreement, RMFS was to (1) coordinate, develop, and secure original, fully developed health, dental, vision, and life insurance plans (collectively, the "Plans") for Frankfort's benefit, which Frankfort would subsequently maintain, and, on a yearly basis would negotiate renewals of those Plans on Frankfort's behalf and for Frankfort's benefit (the "Renewals"), (2) serve as Frankfort's Agent of Record, and (3) establish and manage agency-level distribution of the Plans provided, for all of which RMFS would receive a portion of the compensation paid on those Plans and an additional $18,000 payment (the "Consulting Fee") for obtaining a favorable renewal on Frankfort's behalf. *See* Exhibit 1.

11. In addition, the Agreement contains a non-disclosure agreement regarding the confidential information contained within the Renewals wherein RMFS and Frankfort agree to keep confidential all personal identifying and health information related to the Renewals. *See* Exhibit 1, ¶¶1-2.

12. The Agreement further provides RMFS will obtain certain compensation, specifically, a percentage of the commissions earned from the Plans (the "Commissions"). *See* Exhibit 1, ¶4.

13. The Agreement provides if the parties do not enter into a subsequent contract following the Agreement's termination date of December 31, 2023, the Agreement terminates. *See* Exhibit 1, ¶3.

14. Between January 1, 2020 and December 31, 2022, in line with the Agreement's terms and their respective obligations thereunder, RMFS, as Frankfort's Agent of Record, would

notify Frankfort it was going to start processing that years' Renewals and then RMFS subsequently provided Frankfort that years' Renewals.

15. Thereafter, Frankfort accepted the provided Renewals, paid RMFS its Consulting Fee in January of the following year, and ensured RMFS was paid its owed Commissions by maintaining RMFS as its Agent of Record through the end of the year.

16. Upon allowing RMFS to provide it Renewals for those years, Frankfort was obligated to pay RMFS the Consulting Fee and to ensure RMFS received the Commissions for the respective year's Renewals by maintaining RMFS as its Agent of Record through the end of each year.

17. The Consulting Fee and Commissions are paid in arrears. In other words, Frankfort pays the Consulting Fee in January of the year following the provided Renewals. The carriers from which RMFS obtained/renewed the insurance policies[1] (the "Carriers") each pay RMFS the Commissions as Frankfort's Agent of Record in the year following the provided Renewals.

18. Throughout the fourteen (14) years in which RMFS and Frankfort have had this relationship, RMFS has been very successful in providing Frankfort with Plans with lowered premiums and improved benefits.

19. As it had done for the prior fourteen (14) years, RMFS provided Frankfort notice it was going to start working on the renewal for the 2024 insurance year.

20. Several months later, RMFS delivered to Frankfort the Renewals for the 2024 insurance year (the "2024 Renewals").

21. Upon information and belief, Frankfort provided the 2024 Renewals, as presented by RMFS, to representative(s) and/or member(s) of McGowan and its Predecessor Entities,

---

[1] As specifically defined in the Agreement, Exhibit 1, ¶4.

RMFS Benefit Solutions, LLC's Complaint                                                                 4

including but not necessarily limited to Josh Estelle (previously of Jackson and/or McCormick) and/or Todd Jackson (previously of Keystone), both of whom are now partners of McGowan.

22. McGowan and its Predecessor Entities were and remain RMFS competitors.

23. Upon information and belief, and notwithstanding the existence of the Agreement, Mr. Estelle and Mr. Jackson then circulated executed Agent of Record letters ("the AOR Letters") to the Carriers representing that their agencies (i.e., McGowan and its Predecessor Entities) were the new Agents of Records for Frankfort on the 2024 Renewals, thereby replacing RMFS and depriving RMFS of the Commissions owed from such 2024 Renewals.

24. As the new Agents of Record, McGowan and its Predecessor Entities, vis-à-vis Mr. Estelle and Mr. Jackson, would have access to all personal identifying information which RMFS and Frankfort agreed to keep confidential under the Agreement. *See* Exhibit 1, ¶¶1-2.

25. By providing McGowan and its Predecessor Entities copies of the 2024 Renewals, Frankfort breached the Agreement's confidentiality provisions. *See* Exhibit 1, ¶¶1-2.

26. Upon information and belief, Mr. Estelle contacted the Carriers and asked that Aaron Dicken be copied on communications between RMFS and the Carriers.

27. Several, if not all, of RMFS's Carriers refused the extraordinary request, but upon information and belief, Mr. Estelle represented to them that Mr. Dicken is Frankfort's benefit services Account Manager with McGowan.

28. Seeking to usurp RMFS's relationship with Frankfort and disrupt RMFS's receipt of Commissions, Mr. Estelle and Mr. Jackson sent their AOR Letters just a few months short of the state-imposed renewal deadline and to ensure they were paid the entirety of the benefit from RMFS's work by having the Carriers pay the Commissions to their respective firms as Frankfort's new Agents of Record.

29. Mr. Estelle's AOR Letter was delivered to Anthem four days prior to Anthem releasing the final 2022 Refund Agreement calculations, which reported a $221,767 Reserve Balance created from the 2022 policy year; a refund owed Frankfort, which would factor into Frankfort's calculations the following spring (the "Refund").

30. The Refund was great news for Frankfort because, as Frankfort's Agent of Record, RMFS could use that money to negotiate a rate reduction for Frankfort or allow Frankfort to take a direct payment.

31. Over the course of RMFS's business relationship with Frankfort, RMFS has negotiated renewals that have resulted in refunds totaling over two million dollars to Frankfort's benefit.

32. McGowan's actions, vis-à-vis Mr. Estelle and/or Mr. Jackson, were timed specifically to interfere with RMFS's ability to be paid the Commissions and to take the credit for, and advantage of, the Refund RMFS engineered for Frankfort's benefit.

33. Upon information and belief, McGowan and its Predecessor Entities did not provide Frankfort with any Renewals.

34. Thus, any Commissions paid to McGowan and its Predecessor Entities related to the 2024 Renewals unjustly enriched McGowan as RMFS performed the entirety of the work for which those Commissions are owed.

35. The State of Indiana requires school districts to submit their benefit plan arrangement and premiums in October each year, typically by the end of October.

36. The open enrollment period began November 2, 2023 at Frankfort where new applicants submit insurance requests and Frankfort distributed plan/premium information to the membership.

37. The 2024 Renewals presented by RMFS provided Frankfort with a very low single digit rate hold well below trend for similar plans in Indiana at the time.

38. Despite RMFS providing the 2024 Renewals to Frankfort, and instead of the Carriers communicating with RMFS, Frankfort instructed the Carriers to communicate directly with Frankfort and then subsequently through McGowan.

39. Only after RMFS had undertaken the work and returned the 2024 Renewals to Frankfort, thereby fulfilling its requirements under the Agreement, did Frankfort inform RMFS not to do any further work.

40. As early as August 2023 Mr. Estelle replaced RMFS as Frankfort's Agent of Record.

41. Due to McGowan and its Predecessor Entities replacing RMFS as Frankfort's Agents of Record, they became recipients of the Commissions on the 2024 Renewals to RMFS's detriment.

42. Frankfort accepted the Plans presented by RMFS in the 2024 Renewals and its employees currently utilize the Plans included in the 2024 Renewals.

43. The manner in which Frankfort orchestrated RMFS's replacement as Agent of Record interfered with RMFS's anticipated and owed compensation by way of the Commissions.

44. Frankfort was aware RMFS had begun work on the 2024 Renewals, it accepted the 2024 Renewals from RMFS, it accepted the benefit of the 2024 Renewals, and, for some inexplicable reason, directed McGowan and its Predecessor Entities to substitute for RMFS as its Agents of Record, which deliberately interfered with RMFS's receipt of anticipated compensation and deprived it of payment of Commissions, which began to be paid in February 2024.

45. Frankfort paid RMFS the Consulting Fee from the 2024 Renewals.

46. However, Frankfort failed to ensure RMFS is paid the Commissions.

47. Indeed, Frankfort's actions resulted in McGowan and its Predecessor Entities receiving the Commissions which RMFS was otherwise entitled to receive.

48. Frankfort and McGowan intentionally interfered with RMFS' right to receive the Commissions.

49. On or about April 5, 2024, counsel for RMFS submitted to Frankfort two (2) separate notices of claim – one under the Claims Against Public Schools Act pursuant to Ind. Code § 34-13-3.5-4 (the "CAPSA Notice") and one under the Indiana Tort Claims Act pursuant to Ind. Code §§ 34-13-3-6 and 8 (the "Tort Claims Notice"). True and accurate of the CAPSA Notice and Tort Claims Notice are attached hereto, made a part hereof, and marked as Exhibits 2 and 3, respectively.

50. In its CAPSA Notice and Tort Claims Notice (collectively, the "Notices"), RMFS provided notice of its intent to take legal action to claim compensation from Frankfort for damages for loss suffered based upon the aforementioned facts, circumstances and occurrences, all of which was detailed in the Notices.

51. Additionally, pursuant to the Notices, RMFS outlined its proposed remedy.

52. To date, Frankfort has failed and refused to respond to the Notices.

53. Accordingly, the amounts owed to RMFS for the damages it has sustained remain due and owing.

### COUNT I: BREACH OF CONTRACT

RMFS, by counsel, for Count I of its Complaint against Frankfort, alleges and states as follows:

54. RMFS incorporates and restates the above paragraphs as if fully rewritten herein.

55. The Agreement is a valid contract between RMFS and Frankfort.

56. In return for providing Frankfort yearly Renewals, RMFS was benefited by payment of Consulting Fees and the Commissions.

57. RMFS gave Frankfort notice it was beginning the 2024 Renewal procedure.

58. Frankfort directed RMFS to proceed with the 2024 Renewal procedure.

59. Thereafter, RMFS presented to Frankfort the 2024 Renewals.

60. Upon information and belief, on or about August 2023 – *after* RMFS had already presented the 2024 Renewals – Frankfort instructed McGowan and its Predecessor Entities to file their AOR Letters with the Carriers, improperly substituting for RMFS as Frankfort's Agents of Record.

61. In line with the Agreement's terms, and as a tacit admission of its obligations thereunder, in January 2024 Frankfort paid RMFS the Consulting Fee for the 2024 Renewals.

62. RMFS met its obligations under the Agreement by negotiating the 2024 Renewals on Frankfort's behalf.

63. RMFS met its obligations under the Agreement by timely delivering to Frankfort the 2024 Renewals.

64. Frankfort breached its duties to RMFS by instructing and/or permitting agencies other than RMFS, including specifically McGowan and its Predecessor Entities, to serve as its Agents or Record for purposes of collecting payment of the Commissions.

65. As a direct, foreseeable, and proximate result of Frankfort's breach of contract, RMFS suffered damages in excess of $75,000 with the exact amount to be proven at trial.

**COUNT II: UNJUST ENRICHMENT/QUANTUM MERUIT**

RMFS, by counsel, for Count II of its Complaint against the Defendants, alleges and states as follows:

66. RMFS incorporates and restates the above paragraphs as if fully rewritten herein.

67. RMFS conferred a benefit upon Frankfort by providing it the 2024 Renewals and both Frankfort and McGowan knew RMFS conferred that benefit.

68. Thereafter, Frankfort instructed and/or directed McGowan and its Predecessor Entities to replace RMFS as Frankfort's Agent of Record for the 2024 year.

69. As a result, McGowan and its Predecessor Entities became the recipients of the Commissions related to RMFS's 2024 Renewals.

70. It would be unjust to allow Frankfort and McGowan to remain in possession of the benefits as such benefits both Frankfort (in the form of the 2024 Renewals which Frankfort's employees currently utilize under the Plans provided by RMFS) and McGowan (in the form of the Commissions it received by improperly replacing RMFS as Agent of Record) to RMFS's detriment and expense without adequate compensation.

71. It would be unjust to allow Frankfort to receive the benefits of the 2024 Renewals from RMFS without adequately compensating RMFS.

72. It would be unjust to allow any party other than RMFS, namely McGowan and its Predecessor Entities, to be paid the Commissions.

73. RMFS provided Frankfort the 2024 Renewals in good faith.

74. Frankfort accepted the benefit of the 2024 Renewals by accepting the Plans at discounted rates and improved benefits which RMFS negotiated on Frankfort's behalf under the terms of the Agreement.

75. Frankfort knew RMFS expected payment for providing the 2024 Renewals in the form of the Consulting Fee and the Commissions, representing the fair value of the services RMFS performed for Frankfort's benefit.

76. Based upon the terms of the Agreement, RMFS expected, and was entitled, to receive the Consulting Fee and the Commissions as payment for providing Frankfort the 2024 Renewals. In other words, RMFS did not provide the services gratuitously nor did Frankfort have reason to believe otherwise.

77. Despite knowingly receiving and accepting the benefit of the 2024 Renewals secured by RMFS, Frankfort prevented RMFS from receiving the full value of the services it performed by intentionally diverting payment of the Commissions to parties other than RMFS, namely McGowan and its Predecessor Entities.

78. Despite knowingly receiving and accepting the benefit of the 2024 Renewals, McGowan and its Predecessor Entities replaced RMFS as Agent of Record, thereby preventing RMFS from receiving the full value of its services performed by intentionally diverting payment of the Commissions to McGowan and its Predecessor Entities.

79. Under the circumstances, it would be against equity and good conscience to permit the Defendants to retain the benefits of the 2024 Renewals without compensating RMFS for providing Frankfort the 2024 Renewals and for McGowan improperly receiving the Commissions for such 2024 Renewals.

80. As a direct, foreseeable, and proximate result of the Defendants' unjust retention of the benefits RMFS bestowed upon them without adequate compensation, RMFS has been damaged in an amount in excess of $75,000 with the exact amount to be proven at trial.

81.     Under the equitable doctrines of unjust enrichment and/or *quantum meruit*, this Court should Order the Defendants to pay RMFS the full amount of the Commissions.

**COUNT III: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**

RMFS, by counsel, for Count III of its Complaint against Defendants, alleges and states as follows:

82.     RMFS incorporates and restates the above paragraphs as if fully rewritten herein.

83.     RMFS negotiates the yearly Renewals with the Carriers, as specifically identified in the Agreement. *See* Exhibit 1, ¶4.

84.     To negotiate the yearly Renewals, RMFS maintained lengthy relationships with the Carriers and their personnel.

85.     The Carriers pay RMFS, as Frankfort's Agent of Record, the Commissions directly.

86.     The Agreement requires that RMFS negotiates with the Carriers on Frankfort's behalf to secure that years' Renewals.

87.     Frankfort and McGowan are aware of RMFS's relationship with the Carriers and are aware the Carriers pay RMFS's Commissions as Frankfort's Agent of Record based on the Renewals which RMFS secures on Frankfort's behalf.

88.     By instructing and/or directing entities and/or people other than RMFS, namely McGowan and its Predecessor Entities, to serve as Frankfort's Agent(s) of Record over the 2024 year, Frankfort intentionally interfered with RMFS's business relationship with the Carriers and knowingly prevented the Carriers from paying RMFS the Commissions owed for the 2024 Renewals.

89.     By replacing RMFS as Frankfort's Agent(s) of Record over the 2024 year, McGowan intentionally interfered with RMFS's business relationship with the Carriers and

knowingly prevented the Carriers from paying RMFS the Commissions owed for the 2024 Renewals.

90.　As a direct, foreseeable, and proximate cause of the Defendants' tortious interference with RMFS' business relationship with the Carriers, RMFS has been damaged in an amount no less than $75,000, with the exact amount to be proven at trial.

### COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT

RMFS, by counsel, for Count IV of its Complaint against McGowan, alleges and states as follows:

91.　RMFS incorporates and restates the above paragraphs as if fully rewritten herein.

92.　RMFS and Frankfort entered into a valid contractual relationship related to the 2024 Renewals. *See* Exhibit 1.

93.　Upon information and belief, McGowan and its Predecessor Entities were aware of and/or had reason to know of RMFS's contractual relationship with Frankfort.

94.　By improperly and prematurely replacing RMFS as Agent of Record, McGowan intentionally and unjustifiably interfered with the relationship between RMFS and Frankfort.

95.　By replacing RMFS as Agent of Record over the 2024 year, McGowan intentionally interfered with RMFS's contractual relationship with Frankfort by knowingly preventing the Carriers from paying RMFS the Commissions to which RMFS was entitled.

96.　Further, by replacing RMFS as Agent of Record over the 2024 year, McGowan intentionally interfered with RMFS's contractual relationship with Frankfort by knowingly receiving the Commissions related to the 2024 Renewals which RMFS had negotiated under the Agreement with Frankfort.

97. McGowan's actions were and are intended to injure RMFS and obtain a benefit for itself to RMFS's detriment.

98. McGowan's actions and resulting interference were willful and wanton and undertaken with a callous disregard for the best interests of RMFS.

99. As a direct, foreseeable, and proximate cause of McGowan's tortious interference with RMFS's business and contractual relationship with Frankfort, RMFS has been damaged in an amount no less than $75,000, with the exact amount to be proven at trial.

## COUNT V: DECLARATORY JUDGMENT

RMFS, by counsel, for Count V of its Complaint against Defendants, alleges and states as follows:

100. RMFS incorporates and restates the above paragraphs as if fully rewritten herein.

101. The Agreement is a valid and legally binding agreement under which RMFS is entitled to receive a Consulting Fee and the Commissions for providing Frankfort the 2024 Renewals.

102. RMFS gave Frankfort notice it was initiating work on the 2024 Renewals on Frankfort's behalf, to which Frankfort raised no objection.

103. RMFS provided Frankfort the 2024 Renewals.

104. Frankfort accepted the 2024 Renewals.

105. Frankfort is not permitted to withdraw its assent or acceptance of the Agreement's terms after RMFS performed its obligations under the Agreement, or after accepting the benefit of RMFS's efforts.

106. Following RMFS's delivery to Frankfort of the 2024 Renewals, Frankfort paid RMFS the Consulting Fee in January 2024, as obligated under the Agreement.

107. Under the express terms of the Agreement, RMFS is entitled to receive the Commissions in return for providing Frankfort the 2024 Renewals.

108. Frankfort subsequently instructed and/or directed McGowan and its Predecessor Entities to replace RMFS as Agent of Record in relation to the 2024 Renewals, thereby preventing RMFS from receiving the Commissions to which it was entitled in return for providing Frankfort the 2024 Renewals.

109. Frankfort and McGowan refuse to allow RMFS to serve as its Agent of Record, denying RMFS its owed Commissions, and intentionally diverting payment of the Commissions to parties other than RMFS, namely McGowan.

110. There is now an actual, present controversy over Frankfort's and McGowan's refusal to allow RMFS to serve as its Agent of Record for the 2024 year for purposes of receiving payment of the Commissions in relation to the 2024 Renewals.

111. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201-2202, RMFS requests this Court issue a declaration that (1) the Agreement is a valid, binding, and enforceable contract between RMFS and Frankfort, (2) alternatively, the equitable doctrines of unjust enrichment and/or *quantum meruit* apply, (3) RMFS fulfilled its obligations under the Agreement, (4) Frankfort failed to meet its obligations under the Agreement, (4) RMFS is entitled to receive the Commissions, (5) Frankfort and McGowan have intentionally prevented RMFS from receiving the Commissions, and (6) due to their interference and/or breach, the Defendants are obligated to pay RMFS the full amount of the Commissions.

**DEMAND FOR JUDGMENT**

**WHEREFORE,** RMFS demands judgment against the Defendants as follows:

A. Regarding Count I, BREACH OF CONTRACT: Judgment in RMFS's favor and against Frankfort and an award of damages in an amount in excess of $75,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

B. Regarding Count II, UNJUST ENRICHMENT/QUANTUM MERUIT AGAINST FRANKFORT: Judgment in RMFS's favor and against Frankfort and a finding that if the Agreement between RMFS and Frankfort does not apply, in whole or in part to RMFS's claims, that RMFS is entitled to recover equitably, on the basis of the equitable doctrine of *quantum meruit* and to avoid unjust enrichment, the full amount of the Commissions, which is an amount in excess of $75,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

C. Regarding Count III, TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP: Judgment in RMFS's favor and against Defendants, and an award of damages in excess of $75,000, plus interest at a statutory rate, which the exact amount to be determined at trial;

D. Regarding Count IV, TORTIOUS INTERFERENCE WITH CONTRACT: Judgment in RMFS's favor and against McGowan, and an award of damages in excess of $75,000, plus interest at a statutory rate, which the exact amount to be determined at trial;

E. Regarding Count V, DECLARATORY JUDGMENT: Judgment in RMFS' favor and against the Defendants and an Order:

(1) Declaring the Agreement is a valid, binding, and enforceable contract between RMFS and Frankfort;

(2) Declaring RMFS fulfilled its obligations under the Agreement by delivering the 2024 Renewals;

(3) Declaring that Frankfort failed to meet its obligations under the Agreement by directing other insurance agencies to serve as its Agents of Record thereby depriving RMFS of its owed compensation;

(4) Declaring RMFS is entitled to receive the Commissions flowing from the 2024 Renewals;

(5) Declaring, alternatively, the equitable doctrines of unjust enrichment and/or *quantum meruit* apply;

(6) Declaring Frankfort and McGowan intentionally prevented RMFS from receiving the Commissions; and

(7) Declaring due to their interference and breach, the Defendants are obligated to pay RMFS the full amount of the Commissions.

F. Finding the Defendants' conduct was willful and/or wanton and done in reckless disregard of RMFS's rights, thereby entitling RMFS to recover punitive damages in an amount to be determined at trial;

G. Finding RMFS is entitled to recover all relief available to it under applicable law pursuant to the doctrines of unjust enrichment and *quantum meruit*, including, but not limited to, payment in the amount equivalent to the Commissions, costs and expenses associated with pursuing the sums it is owed, reasonable attorneys' fees, the maximum rate of interest allowable by law and all other sums recoverable by law in an amount to be proven at trial, but which exceeds $75,000, and all such other legal and equitable relief to which RMFS may be entitled in law or in equity.

## JURY DEMAND

Plaintiff RMFS Benefit Solutions, LLC demands a trial by jury on all issues presented herein.

Respectfully submitted,

*/s/ Christopher S. Drewry*
Christopher Steven Drewry (#27089-49)
Evan M. Norris (#34715-49)
DREWRY SIMMONS VORNEHM, LLP
736 Hanover Place, Suite 200
Carmel, IN 46032
(317) 580-4848
(317) 580-4855 (fax)
cdrewry@dsvlaw.com
enorris@dsvlaw.com

*Counsel for Plaintiff, RMFS Benefit Solutions, LLC*